## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

---

**MICHAEL J. ROSE, on Behalf of All Others Similarly Situated,**

**Plaintiff,**

-against-

**HUMANA INC., MICHAEL B. McCALLISTER, JAMES H. BLOEM, DAVID A. JONES, JR., FRANK A. D'AMELIO, W. ROY DUNBAR, KURT J. HILZINGER, WILLIAM J. McDONALD, JAMES J. O'BRIEN, W. ANN REYNOLDS and JOHN DOES 1-10 (BEING CURRENT AND FORMER MEMBERS OF THE ADMINISTRATIVE COMMITTEE OF HUMANA INC. RETIREMENT AND SAVINGS PLAN),**

**Defendants.**

Civil Action No.: 3:08-cv-236-JBC

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF ERISA**

---

Plaintiff Michael J. Rose ("Plaintiff"), individually and on behalf of all other persons similarly situated, alleges the following based upon the investigation by Plaintiff's counsel, which included, *inter alia*, a review of public documents filed by Humana Inc. ("Humana" or the "Company") with the United States Securities and Exchange Commission ("SEC") and the United States Department of Labor ("DOL"), conference calls and announcements made by defendants, securities analysts' reports, wire and press releases published by and regarding the Company, and other publicly available information.

## INTRODUCTION

1.      This is a class action brought pursuant to §§ 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), on behalf of the Humana Retirement and Savings Plan and the Humana Puerto Rico

1165(e) Retirement Plan (collectively, the "Plans"), against the Plans' fiduciaries, including Humana.

2.      Plaintiff alleges that Defendants, as fiduciaries of the Plans, breached their duties to him and to the other participants and beneficiaries of the Plans in violation of ERISA, particularly with regard to the Plans' holdings of Humana stock.

3.      During the Class Period (as defined below), Defendants knew or should have known that Humana stock was an imprudent investment alternative for the Plans. Defendants had intimate knowledge of, and an active role in, the improper activities that allowed Humana to artificially inflate and manipulate the Company's earnings.

4.      This action seeks relief on behalf of the Plans, for losses to the Plans, for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2).  In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3)), Plaintiff seeks other relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

5.      Because Plaintiff's claims apply to the participants and beneficiaries as a whole, and because ERISA authorizes participants such as Plaintiff to sue for breaches of fiduciary duty on behalf of the Plans, Plaintiff brings this as a class action on behalf of all participants and beneficiaries of the Plans during the Class Period.

## JURISDICTION AND VENUE

6.      **Subject Matter Jurisdiction.**  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.      **Personal Jurisdiction.**  ERISA provides for nation-wide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  As all Defendants are either residents of the United States or subject to service in the United States, this Court has personal jurisdiction over them.

8.      **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plans are administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside and/or transact business in this district.

## PARTIES

A.      **Plaintiff**

9.      Plaintiff was an employee of Humana during the Class Period and continues to be a Plan participant, within the meaning of ERISA §§ 3(7) and 502(a), 29 U.S.C. §§ 1002(7) and 1132(a).  Humana stock was purchased or maintained on his behalf by means of the Plan in the Humana Stock Fund.

B.      **Defendants**

### *Humana Defendants*

10.     **Defendant Humana** is a Delaware corporation, with its principal executive offices located at 500 West Main Street, Louisville, KY 40202.  Humana provides various health and supplemental benefit plans for employer groups, government

benefit programs, and individuals in the United States.  During the Class Period, Humana common stock traded on the New York Stock Exchange.

11.     Humana is the Plans' Sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and as such, exercises discretionary authority with respect to the management and administration of the Plans and/or management and disposition of the Plans' assets.  Humana, at all times, acted through its officers, directors and employees, including, but not limited to, members of the (i) Board of Directors' Organization and Compensation Committee (the "Compensation Committee"), (ii) Board of Directors' Investment Committee (the "Investment Committee"), and (iii) the Administrative Committee of the Plans (the "Administrative Committee"), who were appointed by the Company to perform Plan-related fiduciary functions, and did so in the course and scope of their services for the Company.

12.     Humana had, upon information and belief, at all applicable times, effective control over the activities of its officers and employees, including their Plan-related activities.  Through its Board of Directors (the "Board"), or otherwise, Humana had the authority and discretion to hire and terminate said officers and employees. Humana also had the authority and discretion to appoint, monitor and remove officers and employees from their individual fiduciary roles with respect to the Plans.

13.     Additionally, by failing to properly discharge their fiduciary duties under ERISA, the officer, director, and employee fiduciaries breached duties they owed to the Plans' participants and their beneficiaries.  Accordingly, the actions of the Plans' officers, directors, and other employee fiduciaries are imputed to Humana under the doctrine of *respondeat superior*, and Humana is liable for these actions.

4

14. **Defendant Michael B. McCallister** ("McCallister") has served as President, Chief Executive Officer and a director of Humana since February 2000. McCallister signed Humana's relevant SEC filings during the Class Period, participated in the day-to-day management and overall direction of the Company, participated in the preparation of the statements alleged herein to be false, and communicated both directly and indirectly with Plans' participants. McCallister was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition.

15. **Defendant James H. Bloem** ("Bloem") has served as Senior Vice President, Chief Financial Officer and Treasurer of Humana since February 2001. Bloem signed Humana's relevant SEC filings during the Class Period, including the Company's Forms 11-K, participated in the day-to-day management and overall direction of the Company, participated in the preparation of the statements alleged herein to be false, and communicated both directly and indirectly with Plans' participants. Bloem was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition.

### *Director Defendants*

16. **Defendant David A. Jones, Jr.** ("Jones") has served as Chairman of the Board since April 2005, having served as Vice Chairman of the Board since September 1996.

17. **Defendant Frank A. D'Amelio** ("D'Amelio") has served as a director of Humana since September 2003.

18.     **Defendant W. Roy Dunbar** ("Dunbar") has served as a director of Humana since April 2005.

19.     **Defendant Kurt J. Hilzinger** ("Hilzinger") has served as a director of Humana since July 2003.

20.     **Defendant William J. McDonald** ("McDonald") has served as a director of Humana since October 2007.

21.     **Defendant James J. O'Brien** ("O'Brien") has served as a director of Humana since April 2006.

22.     **Defendant W. Ann Reynolds** ("Reynolds") has served as a director of Humana since January 1991.

23.     Defendants McCallister, Jones, D'Amelio, Dunbar, Hilzinger, McDonald, O'Brien and Reynolds shall be referred to collectively herein as the Director Defendants.

24.     The Board, upon information and belief, has primary fiduciary oversight of the Plans.  The Director Defendants are fiduciaries of the Plans within the meaning of ERISA in that they exercise discretionary authority with respect to: (i) the management and administration of the Plans; and/or (ii) the management and disposition of the Plans' assets; and/or (iii) appointing, monitoring, and removing the Plans' fiduciaries.

25.     Because of the Director Defendants' position, they knew the adverse non-public information about the business of Humana, as well as its finances, markets and present and future business prospects, *via* access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and *via* reports and other information provided to them in connection therewith.

26.     During the Class Period, the Director Defendants participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

### *Compensation Committee Defendants*

27.     **Defendant Hilzinger**, in addition to being a member of the Board, served as the Chairman of the Compensation Committee, at all relevant times.   As such, Defendant Hilzinger was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets.

28.     **Defendants Dunbar and McDonald**, in addition to being members of the Board, served as members of the Compensation Committee, and as such were fiduciaries of the Plans within the meaning of ERISA, in that they exercised discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets.

29.     In addition to the Board collectively, the Compensation Committee, upon information and belief, is also a fiduciary of the Plans.  According to the Compensation Committee's charter, available on Humana's corporate website, the Compensation Committee is charged with, *inter alia*, "[a]dminister[ing] the Company's equity compensation programs, including stock option(s) and restricted stock."   The Compensation Committee and its members therein are fiduciaries of the Plans within the meaning of ERISA in that they exercise discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets.  Further, each member of the Compensation Committee, by virtue of their

committee position, was a member of the Board and therefore also had fiduciary responsibility to the Plans and their participants in that regard.

### *Investment Committee Defendants*

30.     **Defendant Dunbar**, in addition to being a member of the Board, served as the Chairman of the Investment Committee, at all relevant times.  As such, Defendant Dunbar was a fiduciary of the Plans within the meaning of ERISA in that he exercised discretionary authority with respect to management and investment of the Plans' assets.

31.     **Defendants D'Amelio and O'Brien**, in addition to being members of the Board, served as members of the Investment Committee, and as such were fiduciaries of the Plans within the meaning of ERISA, in that they exercised discretionary authority with respect to management and investment of the Plans' assets.

32.     In addition to the Board collectively, the Investment Committee, upon information and belief, is also a fiduciary of the Plans.  According to the Investment Committee's charter, available on Humana's corporate website, the Investment Committee is responsible for, *inter alia*, "(1) [e]stablishing…investment options available under the Company's employee benefit plans; (2) [r]eviewing investment performance of the …employee benefit plans."  The Investment Committee's charter further provides that "[t]he primary function of the Investment Committee is to assist the Board of Directors in establishing investment objectives and policies for the Company's investment portfolios and employee benefit plans." The Investment Committee Defendants were fiduciaries of the Plans within the meaning of ERISA in that they exercised discretionary authority and discretionary control with respect to the Plans' management, administration, investments, and assets.

*Administrative Committee Defendants*

33.     **Defendants John Does 1-10 (the "Administrative Committee Defendants")**, at all relevant times, served as members of the Administrative Committee.

34.     At all relevant times, the Administrative Committee Defendants were, upon information and belief, all employees, officers, or directors of Humana.   The Administrative Committee Defendants were fiduciaries of the Plans within the meaning of ERISA in that they exercised discretionary authority and discretionary control with respect to the Plans' management, administration, investments, and assets.

## THE PLANS

### A.     Nature of the Plans

35.     The Plans are "employee pension benefit plan[s]" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and defined contribution plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

36.     The Plans are legal entities that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).  However, in a breach of fiduciary duty action such as this, the Plans are neither plaintiffs nor defendants.  Rather, pursuant to ERISA § 409, 29 U.S.C. §1109, and the law interpreting it, the relief requested in this action is for the benefit of the Plans.  Stated differently, in this action Plaintiff seeks relief that is plan-wide.

37.     The Plans cover eligible employees of Humana and its subsidiaries.

38.     According to the Company's Forms 11-K for the fiscal year ended December 31, 2006 (the "2006 Forms 11-K"), under the terms of both Plans, Humana's matching contribution amounts to 50% of any given participant's contribution up to 6% of eligible compensation contributed to the Plans.  All matching contributions are funded to the participants' Plan accounts on a bi-weekly basis and are invested in the Humana

Stock Fund.  The 2006 Forms 11-K further provide that after the completion of two years of service, Humana makes annual contributions to any given participant's plan account. For the Plan years ended December 31, 2006 and 2005, Humana made an allocation to the participants based on an amount equal to 4% of each participant's qualifying compensation earned during the Plan year, plus 4% of any compensation exceeding the social security taxable wage base.

### B.    Defendants' Fiduciary Status

39.    ***Named Fiduciaries***.   ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).   The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

40.    ***De Facto Fiduciaries***.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent he or she "(i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

41.     Each of the Defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and the Plans' participants under ERISA in the manner and to the extent set forth in the Plans' documents, through their conduct, and under ERISA.

42.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plans, and the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

43.     Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plans' management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

44.     ERISA permits the fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries must still in fact act solely in the interest of participants and beneficiaries, not in the interest of the sponsor.  Moreover, all Plans' fiduciaries were obliged, when wearing their fiduciary hat(s) to act independently of Humana which had no authority to direct the conduct of any of them with respect to the Plans, the Plans' investments, or the disclosure of information between and among fiduciaries or from fiduciaries to the Plans' participants.

### C.   Defendants' Fiduciary Roles

45.    As previously stated, Humana is the Plans' Sponsor.

46.    Upon information and belief, the Plans' documents describe Humana, the Board, the Compensation Committee, the Investment Committee and the Administrative Committee as named fiduciaries of the Plans.

47.    Upon information and belief, instead of delegating all fiduciary responsibility for the Plans to external service providers, Humana chose to internalize at least some of these fiduciary functions.

48.    Upon information and belief, the Plans and their assets are administered and managed by the Compensation, Investment and Administrative Committees (the "Plan Committees"), selected and monitored by the Board.  The Plan Committees exercised broad responsibility for management and administration of the Plans and, among their other duties, were responsible for oversight of the Plans' investment options, policies, and the performance of the Plans' investments, as well as the review of investment managers.

49.    In their capacity to select and monitor investment options for the Plans, the Plan Committees had the discretion and authority to suspend, eliminate, or reduce any Plan investment, including investments in Humana stock.  Upon information and belief, the Plan Committees regularly exercised their authority to suspend, eliminate, reduce, or restructure the Plans' investments. The Plan Committees also reported to the Board regarding these duties and the Plans' events pertaining to the same.

50.    Upon information and belief, the Plan Committees exercised responsibility for communicating with participants regarding the Plans, and providing participants with information and materials required by ERISA.  In this regard, on behalf of Humana and

the Director Defendants, the Plan Committees disseminated the Plans' documents and materials.

51.     The Director Defendants are the Plans' fiduciaries to the extent they exercised their authority to select, monitor, retain, and remove the members of the Plan Committees and, accordingly, exercised authority and oversight over the Plan Committees, which reported to the Board regarding the Plan Committees' fiduciary duties and responsibilities to the Plans and with respect to their actions pertaining to the same.

52.     Therefore, the participation in and knowledge of Humana's inappropriate and potentially unlawful practices by Defendants as alleged herein is imputed and attributed to Humana, the Plan Committees, and the Director Defendants.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

54.     All persons who were participants in or beneficiaries of the Plans at any time during the Class Period, *i.e.*, between September 1, 2007 and the present, and whose accounts included investments in Humana stock.

55.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plans during the Class Period.[1]

---

[1] According to the Company's Forms 5500 for the year ended December 31, 2006, there were a total of 21,994 participants of both Plans at the end of the plan year.

56.      Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)      whether Defendants each owed a fiduciary duty to Plaintiff and other Class members;

(b)      whether Defendants breached their fiduciary duties to Plaintiff and other Class members by failing to act prudently and solely in the interests of the Plans' participants and beneficiaries;

(c)      whether Defendants violated ERISA; and

(d)      whether the Class members have sustained damages and, if so, the proper measure of those damages.

57.      Plaintiff's claims are typical of the claims of the other Class members because Plaintiff and the other Class members each sustained damages arising out of the Defendants' wrongful conduct in violation of federal law as complained of herein.

58.      Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.      Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not

parties to the actions, or substantially impair or impede their ability to protect their interests.

60. Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### I.  *Company Background*

61. According to the Company's 10-K Report for the fiscal year ended December 31, 2007 (the "2007 Form 10-K"), Humana, founded in 1964, is "a full service benefits solutions company, offering a wide array of health and supplemental benefit plans for employer groups, government benefit programs, and individuals." The Company's 2007 Form 10-K further provides that "as of December 31, 2007, we had approximately 11.5 million members in our medical benefit plans, as well as approximately 6.8 members in our specialty products."

62. Humana operates in two segments, Government and Commercial. The Government segment includes beneficiaries of government benefit programs, including: (1) Medicare, a federal program that provides hospital and medical insurance benefits to persons of age 65 and over, and some disabled persons under the age of 65; (2) Military

Services, that provides health insurance coverage to the dependents of active duty military personnel, retired military personnel and their dependents; and (3) Medicaid, a federal program that facilitates the delivery of health care services primarily to low-income residents.

63.     Humana's Commercial segment consists of members enrolled in its medical and specialty products marketed to employer groups and individuals. Its products comprise consumer products, such as Health Maintenance Organization (HMO) products that provide prepaid health insurance coverage to its members through a network of independent primary care physicians, specialty physicians, and other health care providers; Preferred Provider Organization (PPO) products, that are offered primarily to employer groups and individuals; and Administrative Services Only (ASO) products offered to employers who self-insure their employee health plans. The Commercial segment also provides various specialty products, including dental, vision, and other supplemental products.

## II.     *Defendants Failed to Provide Complete and Accurate Information to Plan Participants Regarding Humana's Improper Business Activities, While Continuing to Invest the Plans' Assets in Humana Stock, When It Was No Longer A Prudent Investment for the Plans*

64.     During the Class Period, in order to maintain the Company's image as a steady earnings performer and as having strong financial growth, Humana persistently overstated its earnings estimates and failed to inform Plans' participants that the Company had mispriced its stand-alone Medicare Prescription Drug Plan ("PDPs") and that the Company's PDP-related costs had increased significantly.  The eventual disclosure of Humana's true state of business affairs caused a precipitous decline in the price of the

Company stock and the consequent detrimental impact to the value of Plan accounts of Plaintiff and other Class members.

65. On September 30, 2007, Humana issued its earnings release, made part of its Form 8-K filing with the SEC (the "September 30, 2007 Form 8-K"), for the fiscal third-quarter 2007, and guidance for full fiscal years 2007 and 2008, including expected earnings-per-share ("EPS"). The Company informed the investors in its September 30, 2007 Form 8-K that:

> [T]he company's 3Q07 performance was also $0.05 per share better than expected due to ongoing improvements in the company's Commercial operations and stand-alone Medicare Prescription Drug Plans (PDPs) that are expected to positively impact fourth quarter 2007 and full-year 2008 results.
>
> [T]he company also projects EPS for the year ending December 31, 2008 (FY08E) to be in the range of $5.30 to $5.50, an increase of 10 to 16 percent over FY07E EPS, or 16 to 22 percent [(a)(c)] versus the non-GAAP EPS for FY07E.
>
> "Strong performance in both our business segments fueled a successful third quarter," said Michael B. McCallister, Humana's president and chief executive officer. "Most importantly, the quarter positioned us well to extend our industry-leading growth in both revenues and earnings through 2008 and beyond."

66. On January 9, 2008, Humana reiterated its EPS guidance of $5.30 to $5.50 for full fiscal year 2008 in its Form 8-K filing with the SEC, reporting that:

> On January 9, 2008, officers of Humana Inc. will be meeting with investors and analysts at an industry conference. During the meetings, the Company intends to address its prospects its performance and will reaffirm the Company's earnings per share guidance for the full year 2008 of $5.30 to $5.50 . . .    Gross sales for Medicare Advantage to date for 2008 are on track with the Company's expectations, while gross sales for stand-alone

>    Prescription Drug Plans are somewhat ahead of
>    expectations.

67.    On February 4, 2008, Humana filed with the SEC its Form 8-K and a related press release reporting its financial results for the fiscal fourth-quarter 2007 and raising its earnings estimates for the full fiscal year 2008.  The Company announced that it now expected EPS in the range of $5.35 to $5.55 for full fiscal year 2008, while EPS for the first quarter of 2008 was expected to be in the range of $0.80 to $0.85.

68.    On a conference call, conducted later that same day, Defendants reiterated the Company's anticipated EPS for 2008.  Commenting on the Company's outlook, Defendant McCallister assured investors that:

>    As Jim Bloem will explain, we anticipate $0.05 per share
>    additional 2008 benefit due to the lower 2007 effective tax
>    rate.  Accordingly this morning we raised our 200[8]
>    earnings per share guidance to a range of $5.35 to $5.55,
>    with continued membership growth and strong operational
>    execution driving these results.
>
>                              ***
>
>    We believe the 2007 achievements just described position
>    us well for 2008, both in terms of the existing environment
>    and future trends.

69.    Defendant Bloem also commented positively regarding the Company's prospects in the upcoming year:

>    The primary factor driving this less-pronounced pattern is
>    the composition of our 2008 PDP membership, which has
>    changed from last year.  We have nearly 300,000 fewer
>    low-income senior members effective January 1, with a
>    higher percentage of non-low-income seniors in our
>    Enhanced Plan and a lower percentage of non-low-income
>    senior members in the Complete plan.  The decline in the
>    percentage of low-income members is particularly relevant
>    in analyzing the quarterly patterns, because these seniors
>    have a steeper declining slope to their quarterly benefits

ratio progression versus the remaining Part D members, with the first quarter ratio much higher on low incomes than the overall average and the fourth quarter much lower. Consequently, our lower membership in the low-income block is anticipated to lower the quarterly benefits ratio pattern in the first half of the year and raise it slightly in the back half of the year compared to 2007.

*** 

So here is the two fold take away. The composition of our PDP membership will have a significant impact on the quarterly pattern of our Medicare benefits ratio without necessarily impacting the full year ratio. And then secondly, the 2008 quarterly Medicare benefits ratio pattern is expected to drive our quarterly earnings per share for this year.

*** 

Finally, also as expected, prescription drug trends were in the mid-to high single digits. Based on our ongoing deep-dive analysis of benefit expense trend factors, we do not foresee any significant changes to the components of our cost trends as we move into 2008, as is stated in this morning's press release. So accordingly, we remain confident of our ability to meet our 2008 Commercial pretax earnings target of $280 million to $300 million and we look forward to sharing our progress with you each quarter.

70.     Following the Company's earnings announcement, Carl McDonald, an equity analyst at Oppenheimer & Co., wrote that "Humana seems well positioned for EPS upside in 2008."

71.     On February 12, 2008, Defendant Bloem participated in the UBS Global Healthcare Services Conference in New York, NY and again reiterated that the Company expected EPS in the range of $5.35 to $5.55 for the full year 2008.

72.     On February 28, 2008, Defendant McCallister participated in the Merrill Lynch Investor Meetings in Toronto, Canada, and also reiterated that the Company expected EPS in the range of $5.35 to $5.55 for the full year 2008.

73.     A mere five weeks later, however, on March 12, 2008, the Company stunned investors by issuing a press release headlined "Humana Revises Earnings Guidance," as part if its Form 8-K filing with the SEC (the "March 12, 2008 Form 8-K"), announcing that Humana would be revising its earnings estimates.  Specifically, Humana revealed that its first quarter 2008 EPS were now expected to be in the range of $0.44 to$0.46, versus previous guidance of $0.80 to $0.85 per share.  For the full year 2008, the Company now expected EPS to be in the range of $4.00 to $4.25 per share, versus previous guidance of $5.35 to $5.55 per share.  Humana attributed these revised earnings to "updated projections for the company's FY08 stand-alone PDP financial performance."

74.     The March 12, 2008 Form 8-K further explained that:

> The company's revised projections for it stand-alone PDP's financial performance are based upon analysis of pharmacy claims through February 2008.   Higher-than-anticipated claims volumes for the stand-alone PDPs year to date are reflective of a combination of factors including:
>
> - Enhanced Plan actuarial assumptions versus experience,
> - Enhanced Plan new member experience, and
> - Standard Plan member mix.

75.     Upon this announcement, shares of Humana stock declined $6.50 per share from its close at $47.38 on March 11, 2008, to close at $40.88 per share on March 12, 2008, on extraordinarily high trading volume.

76.     The same day, commenting on the precipitous decline of Humana stock, *Bloomberg.com*, in an article entitled, "Humana, Following Wellpoint, Cuts Earnings Forecast," reported that:

> Humana Inc., the second-largest seller of Medicare drug plans…is cutting its 2008 forecast as prescription costs jumped.  Humana fell 14 percent, and the selloff of other insurers continued.
>
> Humana said expenses soared when it lowered how much patients pay for medicines in a bid to lure new customers age 65 and older into its Medicare prescription plans. Humana is racing to grab market share from UnitedHealth Group Inc., the largest seller of the U.S. – backed drug plans, analysts said.
>
> Insurers are struggling to lure new members to boost earnings without letting medical costs outstrip premiums. Humana's price cuts attracted sicker than expected members into its Medicare plans, the company said today. …
>
> "Humana priced their drug plan too low in order to get market share, and we're seeing the results of that today," said Sheryl Skolnick, a CRT Capital Group analyst in Stamford, Connecticut, in a telephone interview.  "They are offering a plan with zero co-pays for a 90-day supply of generics through RightSource, their mail-order.  And when you tell seniors something is free, they keep coming back again and again."
>
> ***
>
> Humana this year miscalculated how many elderly with serious medical conditions would choose its Medicare drug plan, among the cheapest available.  The mistake added $160 million to the company's Medicare drug costs in the first two months of this year, executives said today on a conference call.
>
> Humana's lower premiums and co-payments for its enhanced Medicare drug plan this year attracted 188,000 new members on Jan. 1.  Drugs for those newer members

cost about $50 more a month than patients who joined the
plan in prior years, when it was more expensive.

77.     The following day, on March 13, 2008, *TheMotleyFool.com*, in an article

entitled "Humana's Hurting," further elaborated on Humana's business difficulties:

> Humana's chart looks like steps in the grand Canyon that
> go down to the Colorado River.
>
> …Humana dropped another 14% yesterday on news that it
> would nearly halve its… guidance for the first quarter.
>
> …Humana's gloomier outlook owes to a miscalculation in
> setting up its Medicare prescription-drug plans.
>
> When Humana set up the plan, the Centers for Medicare
> and Medicaid Services (CMS) rules required it to lower the
> copayments on drugs because members are allowed to pay
> only a certain percentage of the total costs.   But the
> company overestimated the use of high-cost drugs, when it
> should have assumed that members would substitute the
> lower-cost drugs that require lower copayments.
>
> By lowering the copayments on drugs, Humana shifted
> more of the costs onto itself.   That's bad enough, but the
> situation gets worse.   Seniors who were taking high-cost
> medicines and looking for a deal found one in Humana's
> plans, which further increased its costs.

78.     The same day, *The Wall Street Journal*, in an article entitled "Humana

Cuts Forecast, Shares Tumble," also reported on Humana's flawed calculation of its PDP:

> Humana yesterday said its lowered guidance related to its
> Medicare prescription-drug plans.   One major problem was
> that in designing its Enhanced plan for 2008 the Louisville,
> Ky., company overestimated how much consumers would
> use drugs that carry higher co-payments.   That would have
> led to higher overall out-of-pocket costs for consumers than
> Medicare allows.
>
> In response, Humana cut the co-pays, which required the
> company to shoulder a greater share of the plan's drug
> expenses.   Meanwhile, the reduced co-pays attracted people

with higher drug costs to the Enhanced plan, further increasing Humana's costs.

79.     During the Class Period, as described herein, Defendants knew or should have known that Humana stock was an imprudent investment for the Plans due to the fact that (a) Humana was unable to properly calculate the prescription drug costs of its newly acquired PDP members; (b) Humana's costs associated with its PDPs had dramatically increased; and (c) that the Company's statements concerning Humana's anticipated EPS for the first quarter of 2008 and full year 2008 were lacking in a reasonable basis at all relevant times and were therefore materially false and misleading. As a result of these undisclosed facts, Humana's stock price was artificially inflated making it an imprudent investment for the Plans.

80.     Upon information and belief, Humana regularly communicated with employees, including Plans' participants, about the Company's performance, future financial and business prospects and Humana stock.   During the Class Period, upon information and belief, the Company fostered a positive attitude toward Humana stock as a Plan investment, and/or allowed Plans' participants to follow their natural bias toward remaining invested in the stock of their employer, even after divestiture was possible, by not disclosing negative material information concerning investment in Humana stock.  As such, Plans' participants could not appreciate the true risks presented by investments in Humana stock and therefore could not make informed decisions regarding their investments in the Plans.

## CAUSES OF ACTION

## COUNT I

### *Failure to Prudently and Loyally*
### *Manage the Plans and Plans' Assets*

### *(Breaches of Fiduciary Duties in Violation of ERISA § 404 by All Defendants)*

81.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

82.     At all relevant times, as alleged above, Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

83.     As alleged above, Defendants were all responsible, in different ways and to differing extents, over management of the Plans or disposition of the assets of the Plans and were, during the Class Period, responsible for ensuring that the Plans' investment options, including Humana Stock Fund, made available to participants in the Plans, were prudent and are liable for losses incurred as a result of such investments being imprudent.

84.     Additionally, pursuant to ERISA, fiduciaries are required to disregard plan documents or directives they know or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Thus, fiduciaries may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

85.     Defendants were obligated to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

86.     According to the DOL regulations and case law interpreting ERISA § 404, a fiduciary's investment or investment course of action is prudent if:  a) he or she has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and b) he or she has acted accordingly.

87.     Again, according to DOL regulations,  "appropriate consideration" in this context includes, but is not necessarily limited to:

- A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action; and

- Consideration of the following factors as they relate to such  portion of the portfolio:

- o   The composition of the portfolio with regard to diversification;

- o   The liquidity and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and

- o   The projected return of the portfolio relative to the funding objectives of the plan.

88.     Given the conduct of the Company as described above, Defendants could not possibly have acted prudently when they continued to invest the Plans' assets in Humana stock because, among other reasons:

- Defendants knew of and/or failed to investigate the mispricing of Company's PDPs;

- Defendants knew of and/or failed to investigate the increased costs of the Company's PDPs and the effect of the increased costs on Humana's operations;

- The risk associated with the investment in Humana's stock during the Class Period was an extraordinary risk, far above and beyond the normal, acceptable risk associated with investment in company stock;

- This abnormal investment risk could not have been known by the Plans' participants, and Defendants were aware or should have been aware that it was unknown to them (as it was to the market generally), because the fiduciaries never disclosed it; and

- Knowing of this extraordinary risk, and knowing the participants were not aware of it, Defendants had a duty to avoid permitting the Plans or any participant from investing Plans' assets in Humana stock.

89.     Defendants breached their duties to prudently and loyally manage the Plans' assets.  During the Class Period, Defendants knew or should have known that Humana stock was not a suitable and appropriate investment for the Plans as described herein.  Nonetheless, during the Class Period, Defendants continued to invest the Plans' assets in Humana stock and to direct and approve the ongoing, automatic investment of the future Company contributions in Humana stock, instead of other, more suitable, investments.  Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take adequate steps to prevent the Plans, and indirectly the Plans' participants and beneficiaries, from suffering losses as a result of the Plans' investment in Humana stock

90.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investment.

91.     Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Defendants named in this count, are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT II

### Failure to Provide Complete and Accurate
### Information to Participants and Beneficiaries

### (Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 by All
### Defendants)

92.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

93.     As alleged above, during the Class Period, all Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

94.     As alleged above, the scope of the fiduciary responsibilities of all Defendants, to differing extents, included disseminating Plans' documents and/or Plan-related information to participants regarding the Plans and/or assets of the Plans.

95.     The duty of loyalty under ERISA required Defendants to speak truthfully to participants, not to mislead them regarding the Plans or the Plans' assets, and to disclose information that participants need in order to exercise their rights and interests under the Plans.

96.      This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plans with complete and accurate information, and to refrain from providing false information or concealing material information regarding the prudence of maintaining investment in the Plans, so that participants can make informed decisions with regard to their investment options available under the Plans.

97.     This fiduciary duty to honestly communicate with participants is designed not merely to inform participants and beneficiaries of conduct, including potentially illegal conduct, bearing on their retirement savings, but also to forestall such misconduct in the first instance.  By failing to discharge their disclosure duties, Defendants facilitated the misconduct in the first instance.

98.     Defendants breached their fiduciary duties by failing to provide the Plans' participants with complete and accurate information regarding the Company's mispricing

of its PDPs, the rising costs associated with the PDPs and, generally, by conveying inaccurate information regarding the soundness of the Company's financial health and the prudence of investing retirement contributions in the Company stock.

99.     Had the Defendants not constantly reinforced the safety, stability and prudence of investment in Humana stock during the Class Period, Plans' participants, to the extent they were permitted, could have divested their holdings of Company stock in the Plans or at least diversified such holdings, thereby mitigating the Plans' losses.

100.    Defendants in this Count are also liable as co-fiduciaries because they knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding Humana stock, despite knowledge of their breaches.  Further, they enabled such conduct as a result of their own failure to satisfy their fiduciary duties and as a result of having knowledge of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to Plans' participants, yet not making any effort to remedy the breaches.

101.    Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable plan participant that results in harm to the participant, the participant is presumed as a matter of law to have relied upon such misrepresentations and omissions to his or her detriment.  Here, the above-described statements, acts and omissions of the Defendants in this Count constituted misrepresentations and omissions that were fundamentally deceptive concerning (a) the pricing of the Company's PDPs, (b), the rising costs associated with the Company's PDPs, (c) the Company's earnings guidance for first quarter of 2008 and full year 2008, and (d) prudence of investing the Plans' assets in Humana stock, and were

material to any reasonable person's decision about whether or not to invest or maintain any part of their retirement assets in Humana Stock Fund during the Class Period. Plaintiff and the other Class members are therefore presumed to have relied to their detriment on the misleading statements, acts, and omissions of Defendants named in this Count.

102.    Plaintiff further contends that the Plans suffered a loss, and Plaintiff and the other Class members suffered losses, by the above-described conduct of Defendants named in this Count during the Class Period because that conduct fundamentally deceived Plaintiff and the other Class members about the prudence of making and maintaining retirement investments in Humana stock, and that, in making and maintaining investments in Humana stock, Plaintiff and the other Class members relied to their detriment upon the materially deceptive and misleading statements, acts and omissions of Defendants named in this Count.

103.    As a consequence of Defendants' breaches of fiduciary duty, the Plans suffered tremendous losses.  If Defendants had discharged their fiduciary duties to prudently disclose material information, the losses suffered by the Plans would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans, and indirectly Plaintiff and the other Plans' participants, lost a significant portion of their retirement savings.

104.    Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

### Failure to Monitor Fiduciaries

### (Breaches of Fiduciary Duties in Violation of ERISA § 404 by Humana, Defendant Bloem and the Director Defendants)

105.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

106.    This Count alleges fiduciary breach against the following Defendants: Humana, Defendant Bloem and the Director Defendants (the "Monitoring Defendants").

107.    As alleged above, during the Class Period the Monitoring Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

108.    As alleged above, the scope of the fiduciary responsibilities of the Monitoring Defendants included the responsibility to appoint, and remove, and thus, monitor the performance of other Plan fiduciaries, including the Plan Committee Defendants.

109.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

110.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic

reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

111.   Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

112.   Here, the Monitoring Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the monitored fiduciaries had access to knowledge about the Company's business problems alleged above, which made Humana stock an imprudent retirement investment, and (b) failing to ensure that the monitored fiduciaries appreciated the huge and unjustified risk of significant investment loss by rank and file employees in their Plan accounts.

113.   In addition, the Monitoring Defendants, in connection with their monitoring and oversight duties, were required to disclose to those they monitored accurate information about the financial condition and practices of Humana that they indisputably knew or should have known, that the monitored Plan fiduciaries needed to make sufficiently informed fiduciary investment decisions. By remaining silent and

continuing to conceal such information from the other fiduciaries, the Monitoring Defendants breached their fiduciary duties under the Plan and ERISA.

114.    The Monitoring Defendants are liable as co-fiduciaries because they knowingly participated in the fiduciary breaches by the monitored Defendants, they enabled the breaches by these Defendants and they had knowledge of these breaches, yet did not make any effort to remedy the breaches.

115.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investment.

116.    Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT IV

### Breach of Duty to Avoid Conflicts of Interest

### (Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 by All Defendants)

117.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

118.    At all relevant times, as alleged above, all Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

119.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan

solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

120.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occurred by (i) failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plans' investment in Humana stock and the information provided to participants and beneficiaries concerning it, (ii) failing to notify appropriate federal agencies, including the DOL, of the facts and transactions which made Humana stock an unsuitable investment for the Plans; (iii) failing to take such other steps as were necessary to ensure that Plans' participants' interests were loyally and prudently served in order to prevent drawing attention to the Company's inappropriate business activities; and (iv) by otherwise placing the interests of the Company and themselves above the interests of the participants with respect to the Plans' investment in Humana stock.

121.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investments.

122.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants named in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

### *Co-Fiduciary Liability*

### *(Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 by Humana, Defendant Bloem and the Director Defendants)*

123.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

124.    This Count alleges co-fiduciary liability against the following Defendants: Humana, Defendant Bloem and the Director Defendants (the "Co-Fiduciary Defendants").

125.    As alleged above, during the Class Period the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

126.    As alleged above, ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he or she may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if it knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  The Co-Fiduciary Defendants breached all three provisions.

127.    **Knowledge of a Breach and Failure to Remedy**:  ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if, that fiduciary has knowledge of a breach by such other fiduciary, unless it makes reasonable efforts under the circumstances to remedy the breach.  Here, Humana, Defendant Bloem and the Director Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

128.    Humana, through its officers and employees, engaged in inappropriate business practices, withheld material information from the market, provided the market with misleading disclosures, and profited from such practices, and, thus, knowledge of such practices is imputed to Humana as a matter of law.

129.    Defendant Bloem as well as the Director Defendants, by virtue of their positions at Humana, participated in and/or knew about the Company's inappropriate business practices, and their consequences, including the artificial inflation of the value of Humana stock.

130.    Because Humana, Defendant Bloem and the Director Defendants knew of the Company's improper business practices, they also knew that the Plan Committee Defendants were breaching their duties by continuing to invest the Plans' assets in Humana stock when it was no longer prudent to do so, and providing incomplete and inaccurate information to Plans' participants.  Yet, Humana, Defendant Bloem and the Director Defendants failed to undertake any effort to remedy these breaches.  Instead, they compounded them by obfuscating the risk that the Company's improper business activities posed to Humana, and, thus, to the Plans.

131.    **Knowing Participation in a Breach:**  ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if it participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.  Humana knowingly participated in the fiduciary breaches of the Plan Committee Defendants in that it benefited from the sale or contribution of its stock at artificially inflated prices.  Humana also, as a *de facto* fiduciary, participated in all aspects

of the fiduciary breaches of the other Defendants.  Likewise, Defendant Bloem and the Director Defendants knowingly participated in the breaches of the Plan Committee Defendants because, as alleged above, they had actual knowledge of the Company's improper conduct and yet, ignoring their oversight responsibilities, permitted the Plan Committee Defendants to breach their duties.

132.    **Enabling a Breach.**  ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

133.    Humana's, Defendant Bloem's and the Director Defendants' failure to monitor the Plan Committee Defendants enabled those committees to breach their duties.

134.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement savings.

135.    Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Co-Fiduciary Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## CAUSATION

136.    The Plans suffered millions of dollars in losses because a significant percentage of the Plans' assets was imprudently invested or allowed to be imprudently invested by Defendants in Humana stock during the Class Period, in breach of Defendants' fiduciary duties.  This loss was reflected in the diminished account balances of the Plans' participants.

137.   Defendants are liable for the Plans' losses in this case because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C.  § 1104(c), and the regulations promulgated thereunder. Defendants withheld material, non-public facts from the Plans' participants, and provided inaccurate and incomplete information to them regarding the true health and ongoing profitability of Humana, and its soundness as an investment vehicle.  As a consequence, the Plans' participants did not exercise independent control over their investments in the Humana stock, and Defendants remain liable under ERISA for losses caused by such investment.

138.   Had Defendants properly discharged their fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Humana stock, eliminating Humana stock as the primary investment alternative when it became imprudent, and divesting the Plans of their holdings of Humana stock when maintaining such an investment became imprudent, the Plans would have avoided a substantial portion of the losses that they suffered through their continued investment in Humana stock.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

139.   Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the assets of the Plans should not have been so heavily invested in Humana equity during the Class Period.

140.   As a consequence of the Defendants' breaches, the Plans suffered significant losses.

141.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan.. …" Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate. …"

142.   With respect to calculation of the losses to the Plans, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plans would not have made or maintained its investments in the challenged investment and, where alternative investments were available (as they were here, in the equities of other Companies), that the investments made or maintained in Humana stock would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the Plans' lost value and puts the participants in the position they would have been in if the Plans had been properly administered.

143.   Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of: (i) a monetary payment to the Plans to make good to the Plans the losses to the Plans resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (ii) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2) and (3), 29 U.S.C. §§ 1109(a) and 1132(a)(2); (iii) reasonable attorney fees and expenses, as provided by

ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (iv) taxable costs and interests on these amounts, as provided by law; and (v) such other legal or equitable relief as may be just and proper.

144.    Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plans in this case.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for:

A.    A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

B.    A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.    An Order compelling the Defendants to make good to the Plans all losses to the Plans resulting from Defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, and to restore to the Plans all profits the Defendants made through use of the Plans' assets, and to restore to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

D.    Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as the result of breaches of fiduciary duty;

E.    An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.      Actual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.      An Order that Defendants allocate the Plans' recoveries to the accounts of all participants who had their accounts invested in the common stock of Humana maintained by the Plans in proportion to the accounts' losses attributable to the precipitous decline in the stock of Humana equity;

H.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.      An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.      An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants, including appropriate modifications to the Plans to ensure against further violations of ERISA.

DATED: May 1, 2008                **JOHNSON, TRUE & GUARNIERI, LLP**

BY:     <u>S/  J. GUTHRIE TRUE</u>
        J. Guthrie True
        326 West Main Street
        Frankfort, KY  40601
        Telephone:  502-875-6000
        Facsimile:  502-875-6008
        gtrue@jtgattorneys.com

        Robert I. Harwood
        Jennifer K. Hirsh
        **HARWOOD FEFFER LLP**
        488 Madison Avenue
        New York, New York 10022
        Telephone:  (212) 935-7400
        Facsimile: (212) 753-3630
        rharwood@hfesq.com
        jhirsh@hfesq.com

        ***Attorneys for Plaintiff***